Thank you, your honors, and may it please the court, I'm Lindsay See here today on behalf of the West Virginia Attorney General. All parties now agree that strict scrutiny is the wrong standard in this case, but with paragraphs of strict scrutiny analysis and just one sentence referencing the intermediate scrutiny, there's no real argument that the district court applied the correct standard. This court should correct that threshold error and then reverse. But what scrutiny level should we apply? When it comes to the prohibitions, the correct standard of intermediate scrutiny under central Hudson, when it comes to the mandatory disclosures, it is the lower standard under Zouderer, which says that factual and non-controversial disclosures are appropriate as long as they're reasonably related to the state's interest. That's the standard that the Supreme Court and this court has consistently applied. And the statute here falls well within both of them. Why wouldn't we apply intermediate scrutiny to the disclosures because you are directing speech? Well, your honor, the standard for the disclosures is in the Supreme Court's decision in Zouderer, and that is actually a lower standard than intermediate scrutiny. Because in the particular context of commercial speech, the First Amendment interests are substantially weaker. That's the language the Supreme Court used in Zouderer. So in that case, the court doesn't even need to proceed to intermediate scrutiny. It's enough to say that there are factual and non-controversial disclosures reasonably related to the state's uncontested interest in protecting public health and welfare. That's an interest that is more than needs a substantial government interest test. In some cases, such as the Varangani case we cite in our brief, it's enough to even be a compelling state interest. And so here we have an example where the district court made a clear error of law and this court can't apply the correct standard and should reverse. If we look first, these are targeted restrictions for a particular and documented concern that has significant consequences for consumers' health and life. This is not a complete ban on speech. If we were to conclude that the district courts applied the wrong standard of scrutiny, is your suggestion that we remand to the district court to apply the correct standard of scrutiny or that we remand to the district court with directions to dismiss the complaint? Your Honor, we would not object to a remand to apply the correct standard, but we don't think it's necessary for the court to do that because here the evidence in the record is enough for this court to apply the correct standard and then remand with direction to dismiss our preferred outcome. But we would not object to a remand if this court would prefer the district court to undertake a correct analysis in the first instance. But I mean, what would a remand give us that we don't already have? I mean, the question I have is, you know, we have an able set of briefs. The argument is essentially not of something that necessarily requires more fact-finding. It really is insignificant and very significant part of a question of law. I'm wondering what would be gained by remand and why we shouldn't let this drag on and resolve it one way or the other. Certainly, Your Honor, and let me be clear. Our preferred outcome is for the court to do exactly that, for the court to look at the record before it and apply the correct legal standard and reverse. Only if the court is inclined to remand, we don't object there. But we agree this is a case where the court can and should do that analysis itself. Well, did the district court err in holding that certain of the acts required disclosures which failed to satisfy the standard in Zauderer, Z-A-U-D-E-R-E-R, as you said? Yes, Your Honor, I will pronounce it as Zauderer. And yes, the district court did err on those disclosures. We can look at both of them. One of the disclosures talks about the concern about consumers who might see an ad and then stop taking a prescribed drug without talking to their doctor. So the first disclosure says, you should talk to your doctor before you do that. And the second sentence gives the reason why, because discontinuing use of prescribed medication could cause injury or death. That is certainly a fact. It's non-controversial. The two sentences work together to convey this message. This is an appropriate message. As the Supreme Court said in the NIFLA case, health and safety warnings have long been held to be uncontroversial, even when they require mandatory disclosures. I mean, you have those same type of disclosures on any prescription medication. They come with a container with different sort of warnings. And it's routine to say, if your symptoms persist more than seven days, see a doctor. Nobody has ever so far, as I know, contested the disclosures on prescription medications. And I'm wondering why these aren't much the same things as a matter of kind. I mean, I'm wondering, they seem to me to be sort of similar, which is to put the public and the consumers of medications to underscore the importance of seeking medical advice and medical guidance. And as I say, there's, you know, even with non-prescription medications, just aspirin or something, you say, you know, if your symptoms persist, see a doctor. So how do the disclosures required here differ, really? How do they differ? Your Honor, we don't think they do. We think that's precisely the point. These sort of disclosures are very common. They're non-controversial health and safety warnings. There have not been, that I'm aware of, significant challenges or any challenges to those sort of disclosures, or at least not ones that have been successful. I think that's why the Supreme Court said in NIFLA, these sort of health and safety disclosures are ordinary and they've long been understood to be accepted. And it's important to note, again, we are in the commercial speech context where the First Amendment interests are even lower. And the reason that that commercial speech is protected at all is because of the informational value to the consumer. And so giving important health and safety disclosures advances that goal. It doesn't hinder it, as appellees argue. Does it matter that at least part of the disclosure appears to be the, I don't know if it's giving medical advice and directing someone not to stop taking their medication? Well, no, Your Honor. First, I would disagree that that is giving medical advice. If I tell a friend, you should see a doctor, I'm not engaging in the unauthorized practice of medicine. But I think it's important to look at both of those sentences in that to be disclosure together. The second sentence says the reason you should talk to your doctor is because if you discontinue taking prescribed medication, it could cause injury or death. That's clearly factual. That's clearly non-controversial. Let's say the two sentences were combined with a because. Because stopping your medicine could cause injury or death, you should talk to your doctor. It would be hard to argue that that would no longer be factual or non-controversial. A period instead of a because can't be of constitutional importance. And it doesn't take it out of this long-established category of health and safety disclosures. When it comes to commercial speech, a disclosure like this is actually one of the accepted, less restrictive alternatives for outright banning your speech. Again, that's what the Supreme Court said in this outer decision. So it can't be the case that something that's accepted as a less restrictive alternative is itself going to be unconstitutional in that sense. And while we're on the subject of alternatives, I mean, your colleagues on the other side criticized you and your clients because they suggest that the state really hasn't considered any alternatives outright to the measures that you've employed in this case. So I was trying to figure out exactly what the state would do, but maybe that's the answer. There really isn't any alternative. Your Honor, I think that is the answer. Here, the legislature had particular types of advertisements that had evidence were very likely to mislead. And so it banned only those words and phrases in advertisements and required disclosures to correct that tailored harm. This is not a case like Billups, where there may be other alternatives the state could have considered and didn't. It's very different. I think we can also look towards the state. The attorneys are still reading through both the prohibitions and the disclosure sections. The attorneys still seem to me to be perfectly free to present themselves as people who are, you know, seeking to bring suit. I mean, I don't see it as prohibiting the attorneys in this instance from the normal kind of solicitation of legal, of a client. It just seems that the purpose of this is pretty narrowly drafted to avoid confusion. Where you're talking about medication, you can, any message with respect to medications, unless it's made clear, the person watching the television or watching the ad could come to the conclusion that any ad regarding medication is likely to have some kind of professional medical imprimatur or some kind of government sponsorship. And I gather your point is you really need to clear that up and you really need to say, no, this is the kind of message this is. This isn't a government sponsorship. This is an attorney soliciting business for a suit. And your point is you just have to let West Virginians know exactly what kind of communication they are, in fact, receiving. Correct, Your Honor. This is not a law that says that drug attorney advertising is bad, it's against the state interest or trying to restrict it in any way. This is a law that takes no position, doesn't limit the ability to advertise. But it says that there are particular types of advertisement that are likely to, and in fact, evidence shows, have misled consumers in incredibly tragic ways. The legislature, it was perfectly reasonable to conclude based on this evidence that this targeted restriction is appropriate. And even other disclosures, even at the end of the ad, may say that this is attorney advertising. That doesn't change the fact that consumers might be misled into thinking that a government agency, for instance, has said that a particular drug or device is dangerous. That is perfectly appropriate for the West Virginia legislature to have made that determination. These are targeted restrictions, not outright bans, and they clearly fall within the First Amendment's guidelines. Let me ask you this. How many other states have laws that are identical or similar to this one? How widespread are these laws? Your Honor, these laws are newer. We acknowledge that. We cited in our brief that there are two states who already have them and a number of states that are adopting them again now. This is not an area where yet there are dozens and dozens of specific laws on the books, but misleading restrictions are very common. And this is an area where the evidence is growing to show through studies and anecdotes, which is the appropriate standard, that this is a concerning area of public health in the West Virginia. All right. Thank you, counsel. If there are further questions, we can wait. But if not, is the amicus now prepared to give argument on behalf of the appellant? Yes, Your Honor. Thank you very much. Good morning. It may please the court. My name is Albert Land. I'm here on behalf of amicus, the U.S. Chamber of Commerce. And we very much appreciate the court permitting our participation in oral argument today. I'm going to try to cover four points with my limited time. The first is I wanted to stress the substantial amount of evidence that there is that these advertisements and the particular methods of advertising that are targeted by the West Virginia law, there's a substantial amount of evidence that those methods are, in fact, misleading, have misled and are confusing to consumers cited in the briefs and are no different pieces of evidence. Surveys by different groups, academic studies, congressional testimony by doctors, law review. Was the evidence before the legislature or was it evidence that was brought in in the course of a court proceeding? The evidence was proffered to the legislature in committee hearings, Your Honor. The U.S. Chamber of Commerce had a person there at the committee hearing, as well as the Alliance for Patient Access, which is the other amicus. And your point is that weighing public health evidence is a classic legislative police power function. Absolutely, Your Honor. And the plaintiff's only response to the briefs is to ask this court to disregard it. They don't really quarrel with it. And their contention that this court should disregard the evidence is based on the somewhat outlandish claim that this kind of evidence needs to be subject to the Daubert standard. Your Honor, there's not a single case in the country that stands for that proposition. And that's because the law is to the contrary. Supreme Court in Florida Bar v. Wentworth made very clear that anecdotal evidence, survey evidence, even common sense are sufficient in the commercial speech context. Your Honor, my second point is plaintiffs spend a significant amount of their time focused on the recall prohibition. And the point that I want to make there is that I think they read it far more broadly than the prohibition actually encompasses. There are two particular scenarios that they talk about that they contend would be where the word recall would be prohibited. One is where the FDA has made a request that a particular drug or device be recalled. And then the manufacturer refuses that request. Or two, where the FDA makes a request and then has to go get court enforcement. We believe that both of those situations would be permissible uses of recall. The statute says that you can use the word recall where it has been recalled by the government or where it has been recalled through an agreement between the government agency and the manufacturer. It doesn't define what an agreement is. Agreement could be just an informal agreement. It could be where there's been a request and the manufacturer agrees to do it. So I think that their concern about breadth is far overstated, which leads me to my third point. And that's this question of breadth. I don't think that their contention, their claim or complaint about over breadth is properly before this court for two sort of bookend reasons. On the one hand, if this is a facial challenge, which their complaint seems to treat this as, and which the district court clearly treated this as because the district court enjoined the act, the provisions that it enjoined in their entirety against all parties. If it's a facial challenge, the Supreme Court has made extremely clear this is the Fox case. This court has recognized it as well. Over breadth challenges may not be brought on a facial basis against a commercial speech regulation. That is an unequivocal conclusion by the Supreme Court. They know this. And so now on appeal, they've tried to contend that this is in fact an over breadth argument on as applied, is that they haven't offered any advertisements that would be prohibited by the statute. But one example that they give of the word recall that they would like to use is a situation where the FDA requested the recall of Zantac and the manufacturer then agreed to it. And that comes back to my second point, which is we don't think the word recall would be prohibited under the statute in that case. That is an agreement between the government agency and the manufacturer. My final point with my remaining 30 seconds, Your Honor, the one thing we do think the district court got right, to the extent this court does have any concerns about the statute, is that the statute is fully severable. West Virginia Code 2210C makes it very clear that every law passed by the legislature is severable unless there is a clear and contrary indication in the statute. There is no such indication here. The West Virginia Supreme Court has applied 2210C numerous times to sever specific problematic portions of statutes that they apply. Thank you very much. We thank you. And let's hear from the appellee here. May it please the court, Robert Peck on behalf of the appellee. The district court, first of all, found this to be an as-applied challenge, not, as my friend just described, a facial challenge. That issue came up during the preliminary injunction phase, where the court actually did not make a decision on whether strict scrutiny or intermediate scrutiny applied, but said it would fail both and did the analysis for both. And that informs its final decision on summary judgment. When it came to summary judgment, it made a clear, clear description of what the substantive substantial interest test would be. It said it failed it. It didn't need to explain it further, but it failed it for exactly the same reasons it fails strict scrutiny. First of all, this is true, verifiable, non-misleading facts, such as the fact that there is a recall. A recall is defined by the federal government as a voluntary action by the manufacturer. So the moment that a manufacturer pulls a product back and says we're recalling it, this statute plainly says that it is not a recall that can be used. And so in every categorical instance where a recall happens, because it's never an agreement between the FDA and the manufacturer, and it's never solely done by the manufacturer, it prohibits the use of the word. And so that cannot be misleading, but they contend that it is. And they say, well, they keep describing there's substantial evidence that supports this, but there was no evidence in the trial court. They refused to put any evidence and they did not counter any of the plaintiff's evidence. And so what we have is two footnotes that were in a brief in response to our motions in which they name a few of these studies, but the studies don't even say what this claimant says. It doesn't say anything about the use of the word recall should be remedied by banning it. That's one of the things that one of the things that concern me is that when you want to encourage manufacturers to voluntarily recall drugs on their own, before the government gets into the picture, and isn't there a substantial public interest in encouraging manufacturers to voluntarily recall drugs that they have any kind of question about without worrying, without the manufacturer worrying that recall is going to be plastered all over an ad and that would convey the misleading impression that a medication had been recalled by some government agency, when in fact, all we're talking about is a voluntary recall by a manufacturer. The question I have is where I started, and that is that there's a substantial interest that the West Virginia legislature has in the public health message of this, the public health rationale behind this statute. And I don't understand why that public health rationale wouldn't carry through to this recall provision, because if I were a manufacturer and found that the word recall, if I had done anything to go through a test or whatever, then that was immediately going to be part of a legal solicitation. And I'll make a long story short. Why didn't the West Virginia legislature legitimately act in a way that would encourage rather than discourage voluntary recalls on the part of the manufacturer? Well, the fact of the matter is a lawyer and the lawyer's advertisement has nothing to do with whether the manufacturer will recall or not recall it, and the fear that they will be truthfully told, the public will be truthfully told that a recall has occurred does not advance any interest that West Virginia has in public health. To do so, they would have to show that indeed, this is a real problem under Edenfeld versus Fain, a real problem that is substantially advanced by this. But the fact of the matter is a recall should not be kept from the public under First Amendment precedent. One of the things that is critical is that we do not, in the words of Bates, underestimate the public. Isn't it potentially misleading to use the word recall when there has been no recall by any public health agency? Because if the whole purpose is to avoid misleading speech, the recipient of the message when they hear the word recall would think, oh, well, the FDA has recalled or this agency has recalled when that's not correct. This is a categorical ban on the use of the word recall because no public agency orders a recall. And so what you're doing is you're preventing the public from knowing something. And under Sorrell, the fact is that kind of paternalistic idea that the public might misinterpret a truthful statement is not. It's not a true statement, it's a misleading statement. It may be technically true, but there are, you know, misleading impressions can still be conveyed. And the misleading impression seems to me here that when you use the word recall, it would jump to mind that some public agency had pulled the medication off the market. That type of misinterpretation by the public is protected by the First Amendment against any kind of restriction and censorship of the advertiser. The cases are really very clear on this and that even if you give incomplete information, it is fully protected and not misleading. To be misleading, it has to be actually misleading and or inherently misleading. I submit that it cannot be. If you have told the truth, a manufacturer has pulled this from the shelf. And the reason they pull it from the shelf is because of a public health issue. And when they do that, the public ought to know that that happened. And everybody else can say that there's been a recall except for the lawyers who advertise for cases. And so that demonstrates why this is this is a senseless attempt to try to fix what is a public health problem. And to the point that you made earlier, Your Honor, about prescription medication, those disclaimers are part of licensing the drug in the first place. On the other hand here, this has nothing to do with the offer of legal services. Every case that was cited against us has to do with disclaimers that are like the one that we didn't challenge, that this is a legal advertising and an offer of legal services. And it has nothing to do with medicine or drugs or medical devices and their safety. This is an offer for legal services. And the Supreme Court has repeatedly said that that kind of offer, that kind of disclaimer must be tied to the product or service that's being offered. This is not. That's fine. It is. And one of the things that concerned me was that the district court's opinion just confused the standards of review. And one would have thought that the Central Hudson case would have played a central role in the case. Instead, it barely makes an appearance. And what does make an appearance are all kinds of strict scrutiny cases that fail to recognize the lesson protection that commercial speech enjoys and the heightened deference and respect that is given to the state's basic police power, which has always been a power to protect and safeguard the health, welfare, and safety of its residents. And that kind of balance, it wasn't undertaken. Your Honor, with due respect, it was undertaken because both sides briefed it under Central Hudson. The court heard argument on that. The court accepted that for purposes of the preliminary injunction, and that informed the fact that he, for the first time, said that he was employing strict scrutiny. The fact is that this is non-medicine. It doesn't directly advance the state's interest any more than in Sorrel, the ban on knowing how many doctors prescribe certain drugs was supposed to advance Vermont's purposes in public health. And they said, you know, you can't restrict that information. Yes, it may cause some people to doubt whether doctors are prescribing the best medication for me simply because of what's being used in these reports. But that is not a legitimate public health interest to advance by censoring the use of it by certain people. And so in Sorrel, as this court did in Billups, said it doesn't really matter which level of scrutiny we use because they both collapse together. That's Justice Kennedy's language in Sorrel. And so, therefore, the fact that they overlap so much, the test is the same, means that as you're doing your Genova review, there's no reason for you to worry about which test the district court might have primarily relied upon. Now, you also asked my friend whether... You just say it doesn't matter what level of scrutiny the district court relied on, because one of the things that troubled me were all these strict scrutiny cases were making, you know, either a cameo appearance or a substantial appearance in the analysis of this problem. And my contention, Your Honor, is because I was quoting Justice Kennedy's majority opinion in the same thing, the question is, the only difference is, is it compelling as opposed to substantial? And is it narrowly, is it the least restrictive means rather than narrowly tailored? The fact of the matter is, this law fails both tests and clearly fails the Billups, for example. This court said, you know... So your view is that the two standards of review collapse? That's what Justice Kennedy said. So it's the Supreme Court's view, not mine. Then why even have to have two tiers of scrutiny if it doesn't make any difference when the words become meaningless? I might put that to Justice Kennedy, but I don't have an answer for you. I don't think I will. I can understand that, Brock. If I can turn to a couple other questions. The question is, does it prevent lawyers from advertising undisputed evidence in this which requires conspicuously it either be said or written in an advertisement? It requires 30 seconds to take to say everything that's in these disclaimers. That's undisputed. It's the fact of this case. And that means that it does prevent someone from buying a 30 second ad. Do you have to say it or can you simply include it in the print along with the advertisement? Including the print, but it has to be conspicuous. It has to be long enough so that everyone can see it. So it pretty much takes up a major portion of the ad. Now, my friends, when they're briefed. Excuse me, counsel. There are plenty of ads for drugs that appear and medications that appear on television all the time. And every one of those ads goes into the potential side effects and the drawbacks, sometimes in considerable detail. And sometimes you get the idea that the disclaimers and the disclosures of the side effects overshadow the ad itself. But the point I'm making is that when you advertise medications or things having to do with medications. You see these ads and I see these ads and the number of side effects that are advertised, sometimes five or six of them, but they're extensive. And no one has ever thought that that presents those sorts of disclosures required of drug makers have present presents a First Amendment problem. I have two responses. First, it is a condition of approving the drug that the FDA requires all those disclaimers. And so that is a condition of approving the product for sale to the public. Second, as with every other disclaimer law, it is tied to the product being offered. So when you offer a drug, you need to talk about what problems there may be with the drug. Just as if a lawyer offers services, if he says that he charges a contingency fee or that he's had a tremendously successful record in these cases, he also has to add disclaimers that your case may be different or that, you know, you may still be responsible for the costs. But those are tied to the services he's offering. It's not tied to something else that may be affected or influenced by it. And that indirection is enough to invalidate it. I'm not sure that that's a distinction that I buy, because whether you're talking in general terms or whether you're talking about a specific medication, the dangers of the misuse of medication and using it without the advice and the like of the physician. You see, whether we're talking about these ads on TV for particular drugs or whether we're talking about the warnings on a prescription bottle of either prescribed or over-the-counter medications, or whether we are talking about solicitation for drugs in general. And I can't, you know, I can't envision all the different medications that these prohibitions and disclosures would come into play. But I don't see the basic distinction you're trying to draw. I don't see, I don't understand why the fundamental lesson here is that that medications and drug manufacturers are subject to a substantial amount of regulation and that legislatures in this public health area are permitted significant latitude and leeway. And that's what we're talking about. And as I said, it's tied to the actual product being offered rather than services. And the NIFLA case makes that very clear that it must be. If I can just address a couple other things. As I said before, my friends kept talking about the evidence, but there's no evidence anywhere.  But that was not offered in evidence. And the attorney general's office made clear that they were not offering any evidence. And Edenfeld... And the reason for that, that's a legislative function to weigh evidence. If the reasonable relationship tests were applied, it would be. But they have the burden of proof to show that this is something that is substantially a real problem that will be really addressed under Edenfeld. And they did not do that. And under Billups, to address the question you put earlier, Judge Diaz, is under Billups, they have an obligation to show that other efforts were less restrictive efforts were unsuccessful. One thing that this court in Centro Tepeque said was that try public service announcements, try public service advertising. If it's a lesser restrictive means, it's a better fit. And there's every reason to use your state authority to do your own counter speech to anything that you think is problematic. And that has not clearly been tried. Can I go back to the very beginning of your argument? I thought I heard you say that your colleagues on the other side were mistaken when they asserted that this was a facial challenge that in fact was an as-applied challenge. Did I get that right? That's correct. So the response to that from Mr. Lynn was that there's no evidence with respect to the application of the statute to your clients in this case to suggest... But there is. Okay, what is that? We filed affidavits both at the preliminary injunction stage and in connection with the summary judgment, talking about the ads that they do, why those ads would be prohibited under this, why they are uncertain about whether, for instance, they could advertise in a certain way. For instance, in the joint appendix at 113, there's also evidence that we asked the person in charge of the consumer division at the Justice Department of West Virginia, the person that they produced this, their 36th witness, and we asked, what if someone was saying that here is a letter from the FDA, and we're going to blow it up full screen on our ad that says that you need to recall this because it has dangerous amounts of XYZ in it and that's going to harm people's health. Now, the manufacturer hasn't acted yet. The letterhead will have the FDA logo on it and that's prohibited under the statute. And we asked, would that be a violation of the statute? She says, I don't know. And she said, you know, I just can't tell you. And in the end, she said, well, we'll have to go to a court to find out. Well, that has a chilling effect on whether you can do something that's clearly verifiable, truthful speech. It's not misleading that the FDA has asked that the product be recalled. And yet you are in danger of being charged with a misdemeanor or unfair business practice, advertising practice under the statute. That is a violation of the First Amendment, clear as day. And the fact that they don't know really tells us that we don't even have to put in evidence about how dangerous it is. But we did. We talked about one of our clients advertising about babies who are addicted to opioids and the dangers there. Now, the babies are not taking opioids. Their parents who may have died or something else were the ones who took it. They're not going to be further affected about it. Why would we tell those babies that they need to check with their doctor before they stop taking opioids, which is not happening? The fact is also, with respect to medical devices, this covers medical devices. There was no defense of the rationale for medical devices. But medical devices rarely have any kind of prescriptive medicine attached to them. So if you've got a hip replacement that's been recalled or a knee replacement or a vaginal mesh, you know, why would you not be able to tell the public that it's been recalled? They're not going to be removing it themselves. They're not going to be stopping and taking medicine. All right, we appreciate your argument. And we've given you a little bit of extra time. And I'm going to ask Judge Diaz and Judge Floyd if they have any questions of you. Judge Diaz, do you have any questions? Judge Floyd, hearing none, I want to thank you very much. Thank you. Thank you very much. All right, the other side has some rebuttal here. Ms. Lenzing, we're pleased to hear from you in rebuttal. Thank you, Your Honor. First, I'd like to briefly talk about the appropriate standard. And then I'd like to go through the example of recall, because I think it shows the errors that the district court made here. In the Sorrell decision, the court talked about strict scrutiny for content-based restrictions, but then said that that particular case involved Central Hudson because it was commercial speech. So Sorrell did not complete those tests. If there's any doubt, seven years later in the NIFLA decision, the Supreme Court said that content-based restrictions often get strict scrutiny, but only for non-commercial attorney speech. We are in the heartland of commercial speech here. These tests are not the same. To say that the test fails, the law fails for exactly the same reasons it would under strict scrutiny, only shows the error that the district court made. So moving to the recall provision, opposing counsel argues that because some circumstances might be objectively truthful, that's enough for the law to fail. But that gets the standard wrong. Objectively truthful speech can be misleading. And Central Hudson says the standard is whether the speech is more likely to mislead than to inform. And here it was reasonable for the West Virginia legislature to conclude that a loaded term like recall would make a reasonable consumer think that a government entity or agency had been involved in that process. And there is evidence to show that. The evaluation of patients' perspective study, for instance, show that half of patients who came to a clinic thought that their medical device had been recalled when, in fact, it wasn't. There was also evidence from the FTC about alerts and letters sent out about the misleading effects of recall. Opposing counsel argues this evidence isn't good enough, but even their own decision in Edenfield says it is. Studies and anecdotes can be enough. And as this court said in Billups, even when the harm is self-evident, no evidence is necessary. There's simply no court that requires more than that. Opposing counsel is confusing rules for admissibility for what a legislature may appropriately rely on when enacting legislation that has effect on public health. There's also no argument here that the recall provision substantially overburdens protected speech, which again is the appropriate standard for fit under intermediate scrutiny. This is not a categorical ban, as opposing counsel argued. At most, they argue that there is a particular ad that they would like to bring where we agree with the Chamber of Commerce that the law would not prohibit that circumstance. When a government agency requests a recall, it would fall under the language in the statute that talks about an agreement between the manufacturer and the government entity. So we don't have substantial overburdening of other speech. And again, at most, this would only address the recall provision. There's no serious argument that language like consumer medical alert or having a government logo in a way that implies sponsorship does not inherently mislead. Those provisions clearly stand. Of course, we think the recall provision does. But your point is, with respect to the recall provision, it's misleading to use the word recall when no government agency has recalled. It is, Your Honor. We certainly do not concede that that is inappropriate. We recognize that at most, that is the hardest case. But the legislature had evidence before it, which is what this Court and the Supreme Court has required. All right. We thank you and we appreciate both of your arguments a great deal. And we will now proceed into our last case.
judges: J. Harvie Wilkinson III, Albert Diaz, Henry F. Floyd